******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WELLS FARGO BANK, N.A., TRUSTEE *v.*
ROBERT S. STRONG ET AL.
(AC 35253)

Lavine, Beach and Bear, Js.

*Argued November 15, 2013—officially released April 15, 2014*

(Appeal from Superior Court, judicial district of New London, Devine, J. [motion for summary judgment]; Cosgrove, J. [judgment of strict foreclosure].)

*Jeffrey Gentes*, with whom was *Pamela A. Heller*, for the appellant (defendant Diane Strong).

*Marissa I. Delinks*, for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant Diane Strong[1] appeals from the summary judgment as to liability and the subsequent judgment of strict foreclosure rendered by the trial court in favor of the plaintiff, Wells Fargo Bank, N. A., as trustee. On appeal, the defendant claims that the court erred because (1) it granted summary judgment even though there were genuine issues of material fact about the plaintiff's status as owner of the note and mortgage, which implicated the plaintiff's standing, and (2) it denied her request for an evidentiary hearing regarding the plaintiff's affidavit of debt, upon which it relied in granting the plaintiff's motion for judgment of strict foreclosure. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the present appeal. The plaintiff commenced the present action by service of process on November 3, 2009. It made the following allegations in its complaint. The Strongs promised to pay $177,100 to the order of H&R Block Mortgage Corporation (H&R Block) by an adjustable rate note dated December 12, 2003. To secure the note, the Strongs mortgaged a parcel of land located at 111 Heather Glen Lane in Mystic to H&R Block. H&R Block later assigned the note and mortgage to Sand Canyon Corporation, formerly known as Option One Mortgage Corporation (Option One), by an instrument dated March 5, 2004. Option One in turn assigned its interest in the note and mortgage to the plaintiff, as trustee for SABR-2004OP1 Mortgage Pass-Through Certificates, Series 2004-OP1 (mortgage pool),[2] through the plaintiff's servicer and attorney-in-fact, American Home Mortgage Servicing, Inc., by an instrument dated May 26, 2006. The plaintiff owns the indebtedness evidenced by the note and secured by the mortgage, and it was the holder of the note and owner of the debt when it commenced the present action. The Strongs failed to make payments in accordance with the note, and the defendant therefore is in default under the note and the first paragraph of the mortgage. As a result of the default, the plaintiff accelerated the note and declared the principal balance of the note due and payable.

The Strongs filed an answer and special defense on February 9, 2011. They alleged in their special defense that the plaintiff lacked standing to foreclose on their property because ownership of their indebtedness was not transferred to the plaintiff in accordance with the terms of the pooling and servicing agreement (agreement) that governs the mortgage pool, and, consequently, the plaintiff was not the valid owner of the note and mortgage at the time that it commenced the present action. The plaintiff filed a reply to the Strongs' answer and special defense on October 28, 2011, in which it denied their special defense.

The plaintiff moved for summary judgment as to liability only on March 9, 2012, on the ground that it had established a prima facie case for foreclosure, and the defendant's special defense failed to raise a genuine issue of material fact. In support of its motion, the plaintiff submitted copies of the note with an attached allonge indorsed in blank, the mortgage, the two assignments of mortgage, and the notice of default sent to the Strongs, as well as an affidavit given by a vice president of American Home Mortgage Servicing, Inc., who attested that the plaintiff held the defendant's note and owned her debt before it filed the present action. The defendant filed her objection on March 21, 2012, in which she repeated and elaborated upon her special defense of lack of standing. The court, *Devine, J.*, granted the plaintiff's motion for summary judgment in a memorandum of decision dated June 20, 2012.

The plaintiff filed an affidavit of debt on July 20, 2012, in support its motion for judgment of strict foreclosure, filed on November 27, 2009. The affiant, Gerhard Heckermann, averred that he was a vice president of the plaintiff's successor servicer and attorney-in-fact, Homeward Residential, Inc. (Homeward). The defendant filed an objection to the motion for judgment of strict foreclosure on July 20, 2012, arguing, inter alia, that "a simple Internet search" established that Heckermann is a Jacksonville, Florida-based notary, not a vice president of Homeward, and that his signature on his personal website is different from the signature on the affidavit. On the basis of this argument, the defendant requested that the court hold an evidentiary hearing in order to determine whether Heckermann is a vice president at Homeward, whether he is competent to testify to the matters contained in the affidavit, and whether he actually executed the affidavit.

The court, *Cosgrove, J.*, heard oral argument on the motion for judgment of strict foreclosure on September 17, 2012. It subsequently "rejected the defendant's challenge to the affidavit of debt as being without an evidentiary basis" and granted the motion for judgment of strict foreclosure, in an order dated November 21, 2012. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

A

The defendant claims that the court erred in granting summary judgment because there was a genuine issue of material fact about whether the plaintiff validly held the note and owned the mortgage when it commenced the present foreclosure action. The defendant more specifically argues that she demonstrated the plaintiff's failure to meet its burden as movant and overcame her own burden as nonmovant by submitting a copy of the agreement, which provides that (1) all transfers to the

trustee under the agreement are to be made by the depositor; (2) any mortgage note in the mortgage pool that is transferred and delivered to the plaintiff must contain a complete chain of endorsement from the originator to the last endorsee; (3) all of the mortgage loans to be conveyed to the plaintiff under the agreement must be transferred concurrently with the execution and delivery of the agreement; and (4) the plaintiff's rights and responsibilities as trustee are strictly limited by New York trust law and the "policy and intention of the Trust to acquire only Mortgage Loans meeting the requirements set forth in th[e] [a]greement . . . ."

The copy of the note submitted by the plaintiff in support of its motion for summary judgment did not contain a complete chain of endorsement. Furthermore, the assignment of mortgage upon which the plaintiff relies to establish its receipt of the mortgage is dated May 26, 2006, more than two years after the March 1, 2004 date of the agreement. The assignment also indicates that the assignor was the mortgage pool's servicer, Option One, and not its depositor, Securitized Asset Backed Receivables, LLC. The defendant consequently argues that these deviations demonstrate that there are genuine issues of material fact about whether the plaintiff validly held the note and owned the mortgage under the agreement when it commenced the present action, such that the plaintiff was not entitled to a judgment as a matter of law. According to the defendant, this is because the agreement wholly governs the plaintiff's ability to hold the note and own the mortgage, and New York trust law, which governs the agreement, limits a trustee's powers to a trust agreement's express terms.

We are not persuaded. The issue of whether a mortgagor may challenge a foreclosing party's standing on the basis of its noncompliance with a pooling and servicing agreement, to which the mortgagor is not a party and in which such mortgagor has no legal interest, is one of first impression for our appellate courts. Nonetheless, our law with respect to foreclosure actions and third party beneficiaries provides us with a sufficient basis to conclude that the court did not err in granting summary judgment in the present action. We therefore need not address the ever expanding panoply of decisions from courts in other jurisdictions, ranging from state trial courts to federal appellate courts, that have considered the issue under the separate laws and statutes of those jurisdictions.

B

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . Because the trial court rendered judgment for the [plaintiff] as a matter of law, our review is plenary and we must

decide whether the [trial court's] conclusions are legally and logically correct and find support in the facts that appear on the record. . . .

"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book [§ 17-45]. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . .

"Further, because the plaintiff sought summary judgment in a foreclosure action, which is an equitable proceeding, we note that the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 704–705, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002).

"In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." (Citations omitted.) *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013).

"A mortgagee that seeks summary judgment in a fore-

closure action has the evidentiary burden of showing that there is no genuine issue of material fact as to any of the prima facie elements, including that it is the owner of the debt. Appellate courts in this state have held that the burden is satisfied when the mortgagee includes in its submissions to the court a sworn affidavit averring that the mortgagee is the holder of the promissory note in question at the time it commenced the action. . . . The evidentiary burden of showing the existence of a disputed material fact then shifts to the defendant. It is for the maker of the note to rebut the presumption that a holder of the note is also the owner of it." (Citations omitted; internal quotation marks omitted.) Id., 177.

Furthermore, "[t]he possession by the bearer of a note indorsed in blank imports prima facie that he acquired the note in good faith for value and in the course of business, before maturity and without any notice of any circumstances impeaching its validity. The production of the note establishes his case prima facie against the makers and he may rest there. . . . It [is] for the [makers] to set up and prove the facts which limit or change the [bearer's] rights." (Footnote omitted; internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Fequiere*, 119 Conn. App. 570, 578, 989 A.2d 606, cert. denied, 295 Conn. 922, 991 A.2d 564 (2010).

C

In granting summary judgment, the court noted in its well written memorandum of decision: "In the present case, the plaintiff has presented a copy of the note, endorsed in blank, the mortgage and the notice of default sent to the Strongs, which collectively establish the plaintiff's prima facie case for foreclosure. [The defendant] does not dispute the existence or validity of these documents or the fact that the Strongs defaulted. Rather, [the defendant] argues that the evidence is insufficient to demonstrate that the plaintiff is the owner of the debt, as the note was never transferred to the plaintiff in a manner consistent with the [agreement]."

The court then acknowledged that the present action raises an issue of first impression but considered: "In their treatise on Connecticut foreclosures, Denis R. Caron and Geoffrey L. Milne comment on a borrower's ability to invoke the provisions of a [pooling and servicing agreement] to challenge a plaintiff's prima facie case or standing to foreclose. 'The relevance of securitization documents on a lender's standing to foreclose a mortgage is questionable. Simply put, a borrower has a contract—the note and mortgage—with the owner or holder of the loan documents. The borrower, however, is not a party to the pooling and servicing agreement, commonly referred to as a "trust" document. . . . It is a basic tenet of contract law that only parties to an

agreement may challenge its enforcement. . . . [C]lose scrutiny of trust documents and challenges to their veracity appear to offer little benefit to the court in determining the owner or holder of a note in a particular case. If admissible evidence of holder status has been presented, a borrower must then challenge those facts by competent evidence addressed to the delivery of the loan documents. In most instances, a borrower's challenge to the content of trust documents or other borrower claims appear to have little relevance to the issue of standing.' D. Caron & G. Milne, Connecticut Foreclosures (5th Ed. 2011) § 30-3, p. 401.

" 'The law of trusts limits the ability of a borrower to challenge whether conditions in the pooling and servicing agreement were satisfied. . . . "[A] stranger to a trust, when sued by the Trustee, cannot set up as a defense a violation of the rights of the Trust by the Trustee." 90 C.J.S. Trusts, § 363 (a). Generally, the parties to a pooling and servicing agreement are the certificateholders, who own interests in the mortgages, a trustee, a depositor of the assets, and a servicer. Borrowers, however, have no contractual privity with the parties to a pooling and servicing agreement.' [D. Caron & G. Milne, supra], pp. 405–406 . . . ."

The court ultimately concluded: "The [agreement] states that there were three parties to that agreement: Securitized Asset Backed Receivables, LLC (the depositor), Option One Mortgage Corp[oration] (the servicer) and the plaintiff (the trustee). [The defendant] was not a party to or a third party beneficiary of the [agreement]. Thus, [she] cannot invoke the terms of the [agreement] to challenge the plaintiff's ability to establish its prima facie case in this foreclosure action. [The defendant] asserts that she is not seeking to 'enforce' the [agreement]; rather, she claims that she has simply submitted the [agreement] as evidence to counter the plaintiff's claim that it is the owner of [the defendant's] debt. The court finds no relevant distinction between these two ways of raising the [agreement] in an attempt to defeat the plaintiff's motion. Simply put, [the defendant] does not have standing to challenge the plaintiff's alleged lack of compliance with the [agreement] in an effort to show that the plaintiff does not own the debt. Accordingly, the plaintiff has established its prima facie case for foreclosure."

The defendant contends that the court made the following errors in granting summary judgment. The court failed to acknowledge the relationship between the plaintiff's compliance with the agreement and its standing to bring the present action. The court also improperly shifted the burden of proof on summary judgment because the plaintiff could not meet its initial burden, due to its inability to establish its compliance with the agreement. Finally, the court erred in holding that her special defense was legally insufficient because she

lacked standing to enforce the agreement as a nonparty. The defendant takes the position that she sought to use the agreement as evidence of the plaintiff's lack of standing, not to enforce its terms against the plaintiff, and even if this court concludes otherwise, it should join certain of our trial courts and courts in other jurisdictions that have recognized the relevance of a pooling and servicing agreement to a foreclosing party's claim that it owns a mortgage.

D

We begin our analysis by noting, as did the court, that the defendant does not challenge two of the three elements of the plaintiff's prima facie case. Specifically, she does not contest that she has defaulted on the note or that the conditions precedent to foreclosure, as established by the note and mortgage, have been met. Nor does she challenge the veracity of the documents submitted by the plaintiff in support of its motion for summary judgment. The defendant instead challenges only the first element of the plaintiff's prima facie case, that is, the plaintiff's status as owner of the note and mortgage, and she does so only on the basis of the plaintiff's alleged noncompliance with the agreement.

We therefore direct our attention to the specific agreement provisions that are presently at issue. The agreement provides that it was made among Securitized Asset Backed Receivables, LLC, as depositor, Option One as servicer, and the plaintiff as trustee. The agreement also provides: "Section 2.01 Conveyance of Mortgage Loans. (a) The Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee *for the benefit of the Certificateholders*, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund, and the Trustee, on behalf of the Trust, hereby accepts the Trust Fund.

"(b) In connection with the transfer and assignment of each Mortgage Loan, the Depositor has delivered or caused to be delivered to the Trustee *for the benefit of the Certificateholders* the following documents with respect to each Mortgage Loan so assigned:

"(i) the original Mortgage Note bearing all intervening endorsements showing a complete chain of endorsement from the originator to the last endorsee, endorsed 'Pay to the order of _____, without recourse' and signed (which may be by facsimile signature) in the name of the last endorsee by an authorized officer. To the extent that there is no room on the face of the Mortgage Notes for endorsements, the endorsements may be contained on an allonge, if state law so allows and the Trustee is so advised in writing by the Responsible Party that state law so allows . . . ." (Emphasis added.)

The agreement further provides: "Section 10.03 Gov-

erning Law. THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HERETO AND THE CERTIFICATEHOLDERS SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS."

1

We must first address the relationship between the plaintiff's compliance with the agreement and its standing to bring the present foreclosure action, because the issue of standing implicates subject matter jurisdiction. "The issue of standing implicates the trial court's subject matter jurisdiction and therefore presents a threshold issue for our determination." (Internal quotation marks omitted.) *Massey* v. *Branford*, 119 Conn. App. 453, 458, 988 A.2d 370, cert. denied, 295 Conn. 921, 991 A.2d 565 (2010). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [When] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Citations omitted; internal quotation marks omitted.) *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 125–26, 74 A.3d 1225 (2013). "[T]he plaintiff ultimately bears the burden of establishing standing." *Seymour* v. *Region One Board of Education*, 274 Conn. 92, 104, 874 A.2d 742, cert. denied, 546 U.S. 1016, 126 S. Ct. 659, 163 L. Ed. 2d 526 (2005).

In addition to the standards enunciated in part I B of this opinion, "[s]everal general principles concerning mortgage foreclosure procedure . . . guide our analysis. . . . '[S]tanding to enforce [a] promissory note is [established] by the provisions of the Uniform Commercial Code . . . . [See] General Statutes § 42a-1-101 et seq. Under [the Uniform Commercial Code], only a "holder" of an instrument, or someone who has the rights of a holder is entitled to enforce the instrument. General Statutes § 42a-3-301. The "holder" is the person or entity in possession of the instrument if the instrument is payable to bearer. General Statutes § 42a-1-201 (b) (21) (A). When an instrument is endorsed in blank, it "becomes payable to bearer and may be negotiated by transfer of possession alone . . . ." General Statutes

§ 42a-3-205 (b). . . . In addition, General Statutes § 49-17 allows the holder of a note to foreclose on real property even if the mortgage has not been assigned to him. . . . [Our Supreme Court] also has recently determined that a loan servicer for the owner of legal title to a note has standing in its own right to foreclose on the real property securing the note.' " (Citations omitted; footnotes omitted.) *Equity One, Inc.* v. *Shivers*, supra, 310 Conn. 126–27.

We reiterate that the defendant does not dispute the validity of the evidence that the plaintiff submitted in support of its motion for summary judgment as to liability to establish that it was not only the holder but also the owner of the note and mortgage before it commenced the present action. Rather, she disputes the validity of the plaintiff's status as the owner of the note and mortgage, based not on the note or the mortgage themselves but on a pooling and servicing agreement in which she has no legal interest and that does not pertain to her payment obligations pursuant to the note and mortgage. Our appellate courts have not required a foreclosure plaintiff to produce evidence of ownership deriving from a pooling and servicing agreement in making its prima facie case on summary judgment.

This court's opinion in *Ninth RMA Partners, L.P.* v. *Krass*, 57 Conn. App. 1, 746 A.2d 826, cert. denied, 253 Conn. 918, 755 A.2d 215 (2000), is relevant to our analysis even though it is distinguishable to the extent that it involved (1) a promissory note pertaining to a nonmortgage debt and (2) defendants who conceded their liability on the note. In *Ninth RMA Partners L.P.*, after the defendants "stipulated to the entry of summary judgment as to liability," they "contested liability [during the hearing in damages] by claiming that the plaintiff was not a *proper* holder of the note and, therefore, lacked standing to enforce it. Specifically, the defendants attempted to raise doubts about the chain of title to the note." (Emphasis added.) Id., 3.

This court rejected the defendants' position: "The defendants make much of the maxim that standing implicates the subject matter jurisdiction of the court and may be raised at any time. The defendants, however, fail to understand that there is a difference between challenging a party's standing to maintain a cause of action and challenging the merits of the cause of action itself. The question of standing does not involve an inquiry into the merits of the case. It merely requires the party to make allegations of a colorable claim of injury to an interest which is arguably protected or regulated by the statute . . . in question. . . .

"When the defendants argued at the hearing in damages that the plaintiff was not a *proper* holder of the note, their argument went to the merits of the case, that is, to whether the plaintiff should prevail. Although they called their claim a lack of subject matter jurisdic-

tion, we do not view it as such. We view it, instead, as a claim that goes to the heart of the issues that would have had to be resolved if the case had gone to trial. . . .

"To prevail in an action to enforce a negotiable instrument, the plaintiff must be a holder of the instrument or nonholder with the rights of a holder. . . . This status is an element of an action on a note. . . . The failure to plead this fact properly is challenged by a motion to strike. . . . The failure to prove such element will result in a judgment for the defendants. . . . In neither event is jurisdiction implicated." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) Id., 5–6. Similarly, we conclude that the defendant's challenge to the *validity* of the plaintiff's status as owner of the note and mortgage, as opposed to the plaintiff's actual possession of the note and ownership of the mortgage, implicates the merits of the present foreclosure action, not the plaintiff's standing to bring the action.

"[T]he term prima facie case has been utilized, according to [one commentator on the law of evidence] . . . where the proponent, having the burden of proving the issue . . . has not only removed by sufficient evidence the duty of producing evidence to get past the judge to the jury, but has gone further, and, either by means of a presumption or by a general mass of strong evidence, has *entitled* himself to a ruling that the opponent should fail if he does nothing more in the way of producing evidence." (Emphasis in original; internal quotation marks omitted.) *Franklin Credit Management Corp.* v. *Nicholas*, 73 Conn. App. 830, 842, 812 A.2d 51 (2002), cert. denied, 262 Conn. 937, 815 A.2d 136 (2003). Because the plaintiff produced evidence that our appellate courts have recognized as sufficient to establish the elements of its prima facie case, it was entitled to the presumption that it had standing and that there were no genuine issues of material fact precluding a judgment as a matter of law in its favor, barring evidence produced by the defendant that showed otherwise. We thus reject the defendant's argument that the plaintiff's alleged noncompliance with the agreement undermined the plaintiff's standing to bring the present action and its ability to establish the ownership element of its prima facie case.

2

Although the plaintiff's alleged noncompliance with the agreement did not impede the plaintiff's ability to meet its burden of proving that it was entitled to summary judgment as a matter of law, we cannot say the same with respect to the defendant and her burden of establishing a genuine issue of material fact or that the plaintiff was not entitled to summary judgment as a matter of law. "Contract obligations are imposed because of conduct of parties manifesting consent, and

are owed only to the specific individuals named in the contract." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 599, 894 A.2d 335 (2006), aff'd, 284 Conn. 193, 931 A.2d 916 (2007). "It is well settled that one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract. . . . Under this general proposition, if the plaintiff is neither a party to, nor a contemplated beneficiary of, [the] agreement, she lacks standing to bring her claim for breach of [contract]." (Internal quotation marks omitted.) *Cimmino* v. *Household Realty Corp.*, 104 Conn. App. 392, 395–96, 933 A.2d 1226 (2007), cert. denied, 285 Conn. 912, 943 A.2d 470 (2008).

The defendant argues that these well established standards do not apply to her special defense of the plaintiff's lack of standing due to its alleged noncompliance with the agreement, because she neither requests relief pursuant to the agreement nor brings an action or counterclaim based on its alleged failure to comply with the agreement. Therefore, she posits, she does not seek to enforce the agreement. She compares her use of the agreement to a tort plaintiff's use of a contract between a principal and its agent to establish their relationship for vicarious liability purposes, or a premises liability plaintiff's use of a lease agreement to establish which party had possession or control of the premises. The defendant, however, does not cite to any authority as to what constitutes or does not constitute contract enforcement in the foreclosure context.

"[A] court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." *GMAC Mortgage, LLC* v. *Ford*, supra, 144 Conn. App. 176. The plaintiff met its burden of proving that it was entitled to summary judgment as to liability and established an undisputed prima facie case by submitting copies of (1) the note with an attached allonge indorsed in blank, (2) the mortgage, (3) the two assignments of mortgage, and (4) the notice of default, as well as an affidavit attesting to the plaintiff's status as holder of the note and owner of the debt at all relevant times. The defendant, however, did not meet her burden of establishing that summary judgment as to liability should not have been rendered by the court either because of a genuine issue of material fact or that it should not have been granted as a matter of law. Accordingly, we conclude that the court did not err in granting the plaintiff's motion for summary judgment.

II

The defendant's second claim is that the court erred because it improperly denied her request for an evidentiary hearing regarding the plaintiff's affidavit of debt, upon which the court relied in granting the plaintiff's

motion for judgment of strict foreclosure. More specifically, the defendant argues that the court's denial of the request was clearly erroneous, given that she had a good faith basis for challenging the validity of the affidavit, and the affidavit was the only evidence before the court when it decided the motion for judgment of strict foreclosure. We are not persuaded.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . Additionally, it is well settled that even if the evidence was improperly admitted, the [defendant] must also establish that the ruling was harmful and not likely to affect the result of the trial." (Internal quotation marks omitted.) *National City Mortgage Co.* v. *Stoecker*, 92 Conn. App. 787, 797, 888 A.2d 95, cert. denied, 277 Conn. 925, 895 A.2d 799 (2006).

Practice Book § 23-18 provides: "(a) In any action to foreclose a mortgage where no defense as to the amount of the mortgage debt is interposed, such debt may be proved by presenting to the judicial authority the original note and mortgage, together with the affidavit of the plaintiff or other person familiar with the indebtedness, stating what amount, including interest to the date of the hearing, is due, and that there is no setoff or counterclaim thereto. (b) No less than five days before the hearing on the motion for judgment of foreclosure, the plaintiff shall file with the clerk of the court and serve on each appearing party, in accordance with Sections 10-12 through 10-17, a preliminary statement of the plaintiff's monetary claim."

The defendant did not raise a defense regarding the amount of the mortgage debt at any point. She makes much of the amount of time between the plaintiff's filing of its affidavit of debt on July 20, 2012, and the scheduled hearing for the plaintiff's motion for judgment of strict foreclosure on July 23, 2012, in explaining why she sought to establish her position with limited evidence and through an objection rather than a defense. We are not persuaded. During the July 23, 2012 hearing, the parties agreed that the court could "mark off" the hearing to a future date. The court subsequently heard the motion on September 17, 2012—approximately two months after the plaintiff filed its affidavit of debt and the defendant filed her objection thereto. During that time, the defendant filed a surreply but introduced no additional evidence and made no additional arguments in support of her position on the evidentiary sufficiency of the affidavit of debt. "Where a defendant fails to raise a defense as to the amount of the debt, the plaintiff may prove the debt by way of an affidavit pursuant to Practice Book § 23-18." *Bank of America, FSB* v. *Franco*, 57 Conn. App. 688, 694, 751

A.2d 394 (2002) (defendant claimed court improperly rendered judgment of strict foreclosure without competent evidence of debt because affidavit of debt did not identify affiant's relationship with parties in foreclosure action). Cf. *Connecticut National Bank* v. *N. E. Owen II, Inc.*, 22 Conn. App. 468, 473, 578 A.2d 655 (1990) ("when a defendant mortgagor stipulates to the amount of the indebtedness, he is ordinarily barred from later contesting it" under predecessor to Practice Book § 23-18).

The present action is distinguishable from *National City Mortgage Co.* v. *Stoecker*, supra, 92 Conn. App. 798, in which this court held that the trial court abused its discretion in admitting an affidavit of debt into evidence, where the defendant "objected to the affidavit several times" and "specifically contended that the affidavit was hearsay and sought to cross-examine a representative of the plaintiff to ascertain what was paid, when it was paid, by whom it was paid and why it was paid." "[T]he defendant's claim seeking to establish the chronology and specific nature of the payments [therefore] was well articulated and . . . readily distinguishable from a vague claim of insufficient knowledge. Because the defendant challenged the amount of the debt, the use of Practice Book § 23-18 to introduce the affidavit [was] prohibited, and the hearsay rules appl[ied]." (Internal quotation marks omitted.) Id., 798–99.

The defendant in the present action challenged the employment and signature of the affiant, not the amount of the debt. She based her challenge on conjecture derived from a cursory Internet search, not on any binding legal authority, recognized legal principle, or relevant evidence. We accordingly conclude that the court did not abuse its discretion in denying the defendant's request for an evidentiary hearing to challenge the plaintiff's use of an affidavit of debt under Practice Book § 23-18.

The judgment is affirmed and the case is remanded for the purpose of setting a new law day.

In this opinion the other judges concurred.

[1] Robert S. Strong, the named defendant and Diane Strong's husband, died during the pendency of this action, on May 19, 2011. His estate has not been substituted as a defendant in this action. After careful review, we conclude that the record does not contain any filings, arguments, or facts addressing the effect of Robert Strong's death on this action or title to the property at issue. The only defendant involved in this appeal is Diane Strong. We therefore will refer to Robert Strong and Diane Strong collectively as the Strongs and to Diane Strong individually as the defendant hereinafter.

[2] "Securitization starts when a mortgage originator sells a mortgage and its note to a buyer, who is typically a subsidiary of an investment bank. . . . The investment bank bundles together the multitude of mortgages it purchased into a special purpose vehicle, usually in the form of a trust, and sells the income rights to other investors. . . . A pooling and servicing agreement establishes two entities that maintain the trust: a trustee, who manages the loan assets, and a servicer, who communicates with and collects monthly payments from the mortgagors." (Citations omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn.

307, 313 n.4, 71 A.3d 492 (2013).