******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

U.S. BANK, NATIONAL ASSOCIATION, TRUSTEE *v.*
ANNE K. SCHAEFFER ET AL.
(AC 36910)

Gruendel, Sheldon, and Borden, Js.

*Argued May 21—officially released September 29, 2015*

(Appeal from Superior Court, judicial district of
Danbury, Roraback, J.)

*William J. Hanlon*, with whom, on the brief, was
*David M. Bizar*, for the appellant (substitute plaintiff).

*Eileen McGann*, for the appellee (named defendant).

*Opinion*

BORDEN, J. The plaintiff, U.S. Bank, National Association, as trustee for Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2005-AR6 Pooling and Servicing Agreement (U.S. Bank),[1] appeals from the judgment of the trial court dismissing this residential real estate foreclosure action against several defendants, including the named defendant, Anne Schaeffer, for lack of standing.[2] U.S. Bank claims that the trial court applied the incorrect legal standard in determining that it lacked standing to enforce the note. U.S. Bank further claims that, pursuant to the correct standard, it has standing to pursue the underlying foreclosure action. We agree, and therefore reverse the judgment of the trial court.

U.S. Bank brought this foreclosure action. The defendant moved to dismiss the action for lack of standing. Following a series of evidentiary hearings, the trial court granted the motion to dismiss. This appeal followed.

The following facts and procedural history are relevant to the present case. The defendant owns a piece of property located at 308 State Route 39, New Fairfield. On January 5, 2005, the defendant executed a note for a loan in the principal amount of $225,000 in favor of Wells Fargo Bank, National Association (Wells Fargo). At the same time, the defendant also executed and delivered to Wells Fargo a mortgage on the property. The Wells Fargo Asset Securities Corporation (asset corporation), a subdivision of Wells Fargo responsible for its mortgage transactions, was the owner of the debt and Wells Fargo, as the master servicer, maintained possession of the defendant's note and mortgage agreement.

On March 17, 2005, the defendant's note and debt were moved into a trust as part of the Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2005-AR6, Pooling and Servicing Agreement, a pooling and servicing agreement among Wells Fargo, the asset corporation and Wachovia Bank (Wachovia). Wachovia was named trustee of the pooling and servicing agreement. In accordance with the terms of the pooling and servicing agreement, the defendant's note was endorsed in blank by Wells Fargo. Shortly thereafter, Wells Fargo entered into a custodial agreement with Wachovia, as part of which Wells Fargo agreed to act as an "agent for [Wachovia Bank]" and to maintain possession of the documents associated with the pooling and servicing agreement.

On November 29, 2005, Wachovia's corporate trust business was acquired by U.S. Bank. As part of the purchase, U.S. Bank acquired the interest in all of Wachovia's mortgage-backed transactions, including Wachovia's trusteeship in the pooling and servicing

agreement with Wells Fargo and the asset corporation. Wells Fargo continued to act as custodian of those notes and mortgage agreements. On February 18, 2009, U.S. Bank commenced the present foreclosure action, alleging that the defendant had defaulted on the note, and that U.S. Bank was the holder of the note.

The defendant filed a motion to dismiss the foreclosure action on March 27, 2009. On August 5, 2011, the trial court, *Pavia*, *J.*, denied the defendant's motion to dismiss. Shortly thereafter, the trial court reconsidered its decision and vacated its order denying the motion to dismiss. The trial court then held an evidentiary hearing on December 12, 2011. At the hearing, legal counsel for U.S. Bank presented the original note to the court. The original note was signed by the defendant and was made payable to the lender, Wells Fargo. On its last page, the note was endorsed by stamp in blank. The note was identified by Erin Hirzel Roesch, a vice president of Wells Fargo in charge of loan documentation, and a copy of the note was marked and entered into evidence. Judge Pavia, after examining the original note, entered a copy of the note and endorsement into evidence. Hirzel Roesch further testified that the note had remained with Wells Fargo, as custodian of the trust's documents, until the point at which U.S. Bank began legal preparations to initiate foreclosure proceedings. Following the evidentiary hearing, Judge Pavia granted the defendant a continuance to obtain and review those documents related to U.S. Bank's acquisition of the debt and note.

Following almost two years of inaction on the motion to dismiss, on October 15, 2013, the trial court, *Roraback*, *J.*, held a status conference in which the court indicated that an additional evidentiary hearing was needed to resolve the motion to dismiss, and ordered the production of numerous documents from U.S. Bank regarding the note's chain of title. On November 18, 2013, Judge Roraback held an additional evidentiary hearing regarding the documents ordered from U.S. Bank. At the hearing, U.S. Bank provided to the trial court a copy of the pooling and servicing agreement among Wells Fargo, the asset corporation and Wachovia, as well as a copy of the custodial agreement between Wells Fargo and Wachovia. U.S. Bank additionally provided an assignment and assumption agreement in which all interest in Wachovia's corporate trust business was conveyed to U.S. Bank. Judge Roraback asked U.S. Bank to provide to the trial court the original purchase agreement between U.S. Bank and Wachovia. At a subsequent hearing on January 13, 2014, U.S. Bank indicated that it was having difficulty locating the document. In lieu of the purchase agreement, U.S. Bank entered into evidence, over the defendant's objection, a joint affidavit by Charles Pedersen, a vice president of U.S. Bank, and Kevin Shire, a vice president of Wachovia, attesting, on the basis of their personal

knowledge, that U.S. Bank had purchased all of Wachovia's trust assets on November 29, 2005, including the trust containing the defendant's note and debt.

Specifically, this joint affidavit referred to a certain "Purchase Agreement" between Wachovia and U.S. Bank, pursuant to which U.S. Bank acquired all of Wachovia's corporate trust business described in a fourteen-page appendix as "Mortgage-Backed Transactions." The first item on the fourteenth page identified as part of the acquired assets the same Wells Fargo entity that had acquired the note earlier, namely, the Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2005-AR6, Pooling and Servicing Agreement. This affidavit had been recorded on the land records, and U.S. Bank offered a certified copy of it pursuant to §§ 10-1 and 10-4 of the Code of Evidence, which concern the best evidence rule.[3] The court stated that, although the document was admissible "because I do think it satisfies the rules of evidence," the court would nonetheless "give it whatever weight . . . this document might be due . . . ."

On January 13, 2014, the trial court closed the evidence, and subsequently received briefs on the motion to dismiss. The trial court then issued a memorandum of decision on April 3, 2014, granting the motion to dismiss. The trial court specifically noted that, although the evidence presented demonstrated "plausible scenarios under which [U.S. Bank] might have standing," U.S. Bank had failed to prove definitively that it had standing to foreclose, largely because it was unable to provide the original purchase agreement between itself and Wachovia.

More specifically, the court reasoned in its memorandum of decision that U.S. Bank's "inability to locate and enter into evidence a copy of the Purchase Agreement [between U.S. Bank and Wachovia] is fatal to its efforts to prove that it has standing to pursue this matter." One of the other "plausible scenarios" posited by the court was that "ownership of the note in question had been transferred from Wachovia Corporation to another party on or before it entered into the Purchase Agreement with" U.S. Bank. With regard to the joint affidavit, the court gave it what it described as "limited weight," principally because of the best evidence rule.[4] The court stated: "Without having the benefit of the Purchase Agreement itself, the court is unable to know if that agreement transferred ownership of the note." The court then noted that, despite its having ruled that the affidavit was admissible under the best evidence rule, none of the applicable exceptions to the rule applied. U.S. Bank claims that the trial court improperly granted the motion to dismiss, and that the evidence submitted demonstrates that it has standing to foreclose. We agree.

"The issue of standing implicates the trial court's

subject matter jurisdiction and therefore presents a threshold issue for our determination. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [When] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Citation omitted; internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 397–98, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014).

"[B]ecause the issue of standing implicates subject matter jurisdiction, it may be a proper basis for granting a motion to dismiss. . . . The standard of review for a court's decision on a motion to dismiss is well settled. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Citations omitted; internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 413, 35 A.3d 188 (2012).

At the outset of this matter we believe it useful to summarize our existing jurisprudence on standing in foreclosure matters. The ability to enforce a note in Connecticut is governed by the adopted provisions of the Uniform Commercial Code. Pursuant to General Statutes § 42a-3-301, a "[p]erson entitled to enforce an instrument means . . . the holder of the instrument . . . ." (Internal quotation marks omitted.) When a note is endorsed in blank, as in the present case, the note becomes payable to the "bearer" of the note. See General Statutes § 42a-3-205 (b); see also *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 231, 32 A.3d 307 (2011), overruled in part on other grounds by *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 325 n.18, 71 A.3d 492 (2013). When a person or entity has possession of a note endorsed in blank, it becomes the valid holder of the note. General Statutes § 42a-1-

201 (b) (21) (A). Therefore, a party in possession of a note, endorsed in blank and thereby made payable to its bearer, is the valid holder of the note, and is entitled to enforce the note. See *RMS Residential Properties, LLC* v. *Miller*, supra, 231.

In *RMS Residential Properties, LLC* v. *Miller*, supra, 303 Conn. 231, our Supreme Court stated that to seek enforcement of a note through foreclosure, a holder must be able to demonstrate it is the owner of the underlying debt.[5] It noted, however, that a holder of a note is *presumed* to be the rightful owner of the underlying debt, and that unless the party defending against the foreclosure action rebuts that presumption, the holder has standing to foreclose.[6] Id., 231–32. A holder merely needs to produce the note to establish that presumption. "The production of the note establishes his case prima face against the [defendant] and he may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Internal quotation marks omitted.) Id.; see also *American Home Mortgage Servicing, Inc.* v. *Reilly*, 157 Conn. App. 127, 133, A.3d (2015).

Recently in *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 71 A.3d 492 (2013), our Supreme Court fleshed out its analysis of standing articulated in *RMS Residential Properties, LLC*. First, the court noted that when it stated that a holder is the rightful owner of the debt, the court intended to "address the situation in which ownership of the note and ownership of the mortgage rest in different hands at the time the foreclosure action commenced." Id., 323. The court emphasized that the purpose of *RMS Residential Properties, LLC*, was not to restrict those cases in which the ownership of the note and ownership of the debt fell in the same hands. Id., 324–25. Rather, the court articulated a means by which "a debtor may be able to produce evidence demonstrating that the plaintiff, who might otherwise appear to be entitled to enforce the debt [by way of possessing the note] nevertheless lacks standing, *perhaps because ownership of the debt has passed to another party*." (Emphasis added.) Id., 325.

The court in *J.E. Robert Co.* further stated that, even if a defendant were able to demonstrate that the debt was rightfully owned by a different party than the foreclosing party, or by other means was able to rebut the presumption that the holder of the note was the owner of the debt, the result was not an automatic dismissal of the plaintiff's case due to lack of standing. Id., 325 n.18. Rather, the burden would then shift back to the plaintiff to give it the opportunity to demonstrate that the rightful owner had in some way vested in the plaintiff the right to collect the debt secured by the note. Id.

In footnote 18 of *J.E. Robert Co.*, the court laid out an alternative test for cases where the plaintiff is *not the holder* of the note. Id., 325–26 n.18. In those cases

where a nonholder transferee seeks to enforce a note in foreclosure proceedings, the transferee must be prepared to demonstrate, through means of proper supporting documents, its right to seek foreclosure. Id. In this demonstration, the transferee must account for possession of the note by proving the transaction through which it acquired the note from the holder. Id. The court took pains to emphasize, however, that this analysis applied only to *nonholders*. Id.

And recently, this court reiterated this reading of the *J.E. Robert Co.* footnote. In *American Home Mortgage Servicing, Inc.* v. *Reilly*, supra, 157 Conn. App. 130, the plaintiff foreclosing party was a holder of a bearer mortgage note that was, in fact, owned, not by the plaintiff, but by Fannie Mae. This court held that, nonetheless, the plaintiff had standing to foreclose because the evidence showed that Fannie Mae had authorized the plaintiff to enforce the debt. Id., 135. In response to the defendant's claim that the plaintiff's chain of title to the note was insufficient, this court stated: "We reject the defendant's claim that the plaintiff was required to provide a full history of any and all transfers of the note with supporting documentation, as well as documentation of the plaintiff's authority to act on behalf of the owner of the mortgage debt. In support of its claim, the defendant relies on *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 325 n.18. In *J.E. Robert Co.*, our Supreme Court specified that the precept of having the proper supporting documentation in hand *when filing suit* showing the history of the note pertained to cases in which a *nonholder* transferee seeks to enforce a note in foreclosure proceedings . . . .

"Thus, our Supreme Court has stated that this specific precept is applicable to nonholder loan servicers. As such, it is not pertinent here, where the plaintiff is both the loan servicer and the note holder, rather than solely a nonholder loan servicer. The defendant has provided no authority, nor are we aware of any, that supports his suggestion that a note holder, such as the plaintiff, is obligated to produce the documentation showing the full history of the note when filing a foreclosure action. In fact, it is well settled that a note holder may initiate a foreclosure action because of the presumption that the note holder is also the note owner. *RMS Residential Properties, LLC* v. *Miller*, supra, 303 Conn. 231–32." (Citation omitted; emphases in original; internal quotation marks omitted.) *American Home Mortgage Servicing, Inc.* v. *Reilly*, supra, 157 Conn. App. 137 n.10.

The rules for standing in foreclosure actions when the issue of standing is raised may be succinctly summarized as follows. When a holder seeks to enforce a note through foreclosure, the holder must produce the note. The note must be sufficiently endorsed so as to demonstrate that the foreclosing party is a holder, either by

a specific endorsement to that party or by means of a blank endorsement to bearer. If the foreclosing party shows that it is a valid holder of the note and can produce the note, it is presumed that the foreclosing party is the rightful owner of the debt. That presumption may be rebutted by the defending party, but the burden is on the defending party to provide sufficient proof that the holder of the note is not the owner of the debt, for example, by showing that ownership of the debt had passed to another party.[7] It is not sufficient to provide that proof, however, merely by pointing to some documentary lacuna in the chain of title that *might* give rise to the possibility that some other party owns the debt. In order to rebut the presumption, the defendant must *prove* that someone else is the owner of the note and debt. Absent that proof, the plaintiff may rest its standing to foreclose on its status as the holder of the note.

If, on the other hand, the party seeking foreclosure is *not* the holder of the note, it is the foreclosing party's burden, when the issue of standing is raised, to demonstrate by way of proper documentation that it has the right to enforce the note. It may, for example, produce documents showing a valid transfer of the right to enforce the note between the original holder and the foreclosing party.

In applying these legal principles to the present case, we conclude that U.S. Bank has standing to foreclose. As the possessor of a bearer note, it is a holder under the aegis of §§ 42a-1-201 (b) (21) (A) and 42a-3-301. At all times, the note and debt have remained in single ownership. Furthermore, the trial court's conclusion that U.S. Bank's failure to produce the purchase agreement, and that therefore there was a "plausible scenario" under which Wachovia might have transferred ownership of the note to some other party, is wholly insufficient to rebut the presumption that the holder of the note is also the owner of the note and debt. In effect, the trial court improperly relied on the test for standing articulated for nonholders, rather than for a holder like U.S. Bank. And the presence of the specific and detailed joint affidavit, albeit given "little weight" by the trial court, is sufficient to dispel any doubts about U.S. Bank's holder status.

The defendant alternatively attempts to rebut the presumption that U.S. Bank is the owner of the debt by arguing that the note presented to the court was not the original because there was no specific finding that it was the authentic, original note, because the original note was not properly inspected by the trial court or entered into evidence, and because in her testimony, Hirzel Roesch identified a copy of the note instead of the original.[8] The defendant's claims ignore the procedural facts of the note's presentation. At the time of its presentment, both parties agreed to mark a copy of the

note, rather than the original note, for the purpose of subsequent review by the court. At the first evidentiary hearing, Judge Pavia had the original note, which she described as such, in front of her to examine, and both parties described the note as the original.[9] Judge Roraback, in his memorandum of decision, also described the note proffered to Judge Pavia in the first evidentiary hearing as the original note. The only disagreement about the note involved the quality of the stamped endorsement, which was settled by stipulation. The defendant has cited no authority supporting the notion that the plaintiff was required to enter the original note into evidence and have it authenticated to demonstrate standing. Two judges and all of the parties have, at one time or another, agreed on the record that the note before Judge Pavia was the original. As a consequence, we conclude that the defendant's argument fails, and that U.S. Bank was a valid holder of the note endorsed in blank.[10]

Under Connecticut law, the rightful holder of the note is presumed to be the owner of the debt, and the defendant has the burden to rebut such position. The defendant failed to do so, and as a consequence has failed to demonstrate that U.S. Bank lacked standing to enforce the note.

The judgment is reversed, and the case is remanded with direction to deny the motion to dismiss and for further proceedings according to law.

In this opinion the other judges concurred.

[1] During the course of the litigation, the court granted the plaintiff's motion to substitute as plaintiff a somewhat differently named entity, namely, U.S. Bank, National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR6, because the original named plaintiff (U.S. Bank) had assigned the note and mortgage to the substitute plaintiff. We can see no basis for any claim in this appeal regarding this substitution. For simplicity, we refer to the plaintiff as U.S. Bank.

[2] At the time the action commenced, the plaintiff also named Bank of America, National Association, as a defendant. It is not party to this appeal. In this opinion, we refer to Schaeffer as the defendant.

[3] Section 10-1 of the Code of Evidence provides: "To prove a content of a writing, recording or photograph, the original writing, recording or photograph must be admitted in evidence, except as otherwise provided by the Code, the General Statutes or the Practice Book."

Section 10-4 of the Code of Evidence provides: "The contents of a record, report, statement or data compilation recorded or filed in a public office may be proved by a copy, certified in accordance with applicable law or testified to be correct by a witness who has compared it with the original."

We express no opinion on whether the affidavit was properly admitted under these rules of evidence. Nonetheless, because the affidavit was ultimately admitted into evidence, we may consider it as part of the trial court record.

[4] The court articulated certain other formal issues with the affidavit, none of which appears to us to be significant.

[5] Although in many, if not most, cases, the party seeking enforcement of the note will also be the owner of the debt, our jurisprudence has not specifically defined what that distinction means. We construe ownership of the underlying debt to refer to the person or entity to whom the money is ultimately payable. For example, a mere servicer of the note may seek enforcement of it, although ultimately the money would be payable to some other entity. See, e.g., *J.E. Robert Co.* v. *Signature Properties, LLC*, 309

Conn. 307, 313, 71 A.3d 492 (2013) (J.E. Robert Company was servicer of note, but debt was owned by JP Morgan Chase Bank, N.A., to whom money was ultimately payable).

[6] The court reiterated the codification of the "well established common-law principle that the mortgage follows the note," noting that "[o]ur legislature, by adopting [General Statutes] § 49-17, created a statutory right for the rightful owner of a note to foreclose on real property regardless of whether the mortgage has been assigned to him." *RMS Residential Properties, LLC* v. *Miller*, supra, 303 Conn. 230.

[7] It is important to distinguish this test from the test applied when a plaintiff in a foreclosure action is seeking summary judgment. We have previously stated that "[i]n order to establish a prima facie case in a mortgage foreclosure action, *the* [*foreclosing party*] *must prove* by a preponderance of the evidence that it is the owner of the note and the mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied." (Emphasis added; internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, supra, 149 Conn. App. 392; see also *U.S. Bank, N.A.* v. *Foote*, 151 Conn. App. 620, 632, 94 A.3d 1267 (2014); *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013).

[8] The defendant also claims that U.S. Bank, when initially meeting with Judge Roraback, falsely recounted certain events during the evidentiary hearing before Judge Pavia. We disagree; none of the statements challenged is, upon our review, false or misleading.

[9] The defendant's claim that the trial court was going to examine the note to determine whether it had the qualities of an original misinterprets the record. Rather, the record reveals that the trial court indicated that it would mark a copy of the note for the purposes of the exhibit, and allow U.S. Bank to maintain possession of the bearer note, after examining the qualities of the original, so as to ensure the copy and the original were substantially the same. The defendant consented to this plan after receiving a stipulation that the endorsement was stamped. The trial court then was handed the original note by U.S. Bank's counsel; the court examined the note and then returned it to U.S. Bank's counsel. The defendant's rendering of the record does not support the position that Judge Pavia failed to examine the note at the first evidentiary hearing.

[10] The defendant claims that the stamped endorsement on her note is a product of "robo-stamping" and argues that because of the possibility of abuse and fraud through robo-stamping, we should heighten our degree of scrutiny over the validity of the note in the present case. The defendant advanced this argument in her bench brief before the trial court. We note, however, that the defendant submitted no evidence to substantiate her claim that the stamped endorsement in this case was a product of robo-stamping, or that there was any fraud or abuse in the application of the endorsement. As a consequence, there is not a sufficient record from which to appraise the defendant's claim. We therefore decline to review it.