******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CITIBANK, N.A., TRUSTEE *v.* LAURA A. STEIN ET AL.
## (AC 40199)

Lavine, Sheldon and Bright, Js.

*Syllabus*

The plaintiff bank, C Co., sought to foreclose a mortgage on certain real property owned by the defendant B and his former wife, the defendant L. Prior to trial, B filed a motion to dismiss, claiming that C Co. lacked standing to pursue the action against him. The trial court, which heard and decided the motion to dismiss in connection with the merits of the foreclosure action, denied the motion to dismiss and rendered a judgment of strict foreclosure. Thereafter, B filed postjudgment motions for a new trial and for reconsideration of the denial of his motion to dismiss. Subsequently, the trial court granted C Co.'s motion to substitute W Co. as the plaintiff, and B filed a motion for reconsideration of the substitution of W Co. as the plaintiff. After the trial court opened the record to hear additional testimony from C Co.'s witness, N, to determine the identity of the trustee in June, 2015, the identity of the loan servicer on that date, and whether N was familiar with the books of the mortgage servicer, the trial court denied all three of B's postjudgment motions and opened the judgment of strict foreclosure previously entered for the purpose of setting the law days. On B's appeal to this court, *held*:

1. B could not prevail on his claim that the trial court improperly denied his motion to dismiss and found that C Co. had standing to bring the foreclosure action: that court found that C Co. was the holder of the note at the time the foreclosure action was commenced, as C Co. presented a photocopy of the note secured by the mortgage and the court, which credited testimony of the servicing authority that C Co. was the holder of the note endorsed in blank, did not find any evidence that C Co. was not in possession of the note when the present action commenced, B did not present any evidence to contradict that finding, and although B claimed that C Co. was not the trustee at the time of trial and that W Co. had been substituted thereafter, an assignee may continue litigation in the name of the original plaintiff and W Co. was substituted prior to the court's opening the judgment of strict foreclosure for the purpose of resetting the law days; moreover, the court did not abuse its discretion by opening the record to take additional evidence, as the court opened the record to address B's jurisdictional claims and not to give C Co. a second bite at the apple, and even if the court abused its discretion by opening the record in response to B's motion for reconsideration, claims of error will not be reviewed when they have been induced by the party claiming error on appeal.

2. B's claim that the trial court abused its discretion by failing to consider certain documents that he claimed disputed C Co.'s purported ownership of the note and authority to prosecute the foreclosure action was not reviewable, B having failed to brief the claim adequately, as B did not identify where in the record the court issued the ruling with which he took issue, and his brief did not cite any law or analyze the facts pursuant to the law on which he purportedly relied.

3. B could not prevail on his claim that the foreclosure action was deficient and false, which was based on his claim that the mortgagor did not default on the note; although B claimed that L was a nontitle owner of the property and could not mortgage the property, L stipulated at trial that the note she signed was in default and that the signatures on the mortgage appeared to be her signature and that of B, and because B, who was the owner of the property and pledged the property as security for the note signed by L, did not challenge L's stipulation or otherwise dispute that his signature was on the mortgage, he was a mortgagor in default.

4. B's claim that C Co. failed to meet its burden to prove its right to bring the present action as a nonholder in possession of the note was unavailing; the trial court's findings that C Co. was the holder of the note entitled to bring the action against B and that N Co. was the servicer as of 2014 and through the time of trial were supported by the record,

and, therefore, the court properly determined that C Co. met the requirements to prosecute the foreclosure action.

Argued September 7—officially released November 27, 2018

*Procedural History*

Action to foreclose a mortgage on certain real property of the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Stamford and tried to the court, *Heller, J.*; judgment of strict foreclosure; thereafter, the court granted the plaintiff's motion to substitute Wilmington Trust, N.A., as the plaintiff, and the defendant Brian Stein appealed to this court. *Affirmed.*

*Brian Stein*, self-represented appellant (defendant Brian Stein).

*Crystal L. Cooke*, for the appellee (substitute plaintiff).

*Opinion*

LAVINE, J. The present appeal concerns the foreclosure of real property located at 983 New Norwalk Road in New Canaan (property). The self-represented defendant, Brian Stein,[1] appeals from the judgment of strict foreclosure rendered in favor of the substitute plaintiff, Wilmington Trust, N.A. (Wilmington Trust), as successor trustee to the plaintiff, Citibank, N.A. (Citibank), as trustee of the holders of Bear Stearns Alt-A Trust 2006-6, Mortgage Pass-Through Certificates, Series 2006-6. On appeal, the defendant claims that the trial court, *Heller, J.*, (1) erred by denying his motion to dismiss, (2) abused its discretion by denying his motion to reargue and for reconsideration, (3) abused its discretion by refusing to consider, after the June 2015 trial, documents the defendant considered newly discovered evidence, (4) erred in finding that the mortgagor had defaulted on the note and default notice, and (5) erred under *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 71 A.3d 492 (2013), in concluding that Citibank had proven its right as a nonholder in possession to bring the foreclosure action.[2] We affirm the judgment of the trial court.

In its memoranda of decision issued on January 7, 2016, and on February 21, 2017, the trial court set forth the following relevant facts and procedural history. On July 7, 2006, Laura A. Stein, the defendant's then wife,[3] executed and delivered an interest only adjustable rate note to Countrywide Bank, N.A. (Countrywide Bank), in the principal amount of $1,650,000. Countrywide Bank endorsed the note to Countrywide Home Loans, Inc. (Home Loans). Home Loans, thereafter, endorsed the note in blank and provided it to Citibank. To secure the note, the defendant and Laura Stein executed in duplicate a mortgage[4] on the property and delivered it to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Countrywide Bank. MERS assigned the mortgage to Citibank on November 25, 2009.

The court also found, pursuant to paragraph 3 (A) of the note, that Laura Stein was to make monthly payments of interest only on the first day of each month, commencing on September 1, 2006. She and the defendant last made a monthly payment on the note on July 16, 2008. On September 16, 2008, Home Loans, which was the servicer of the loan on behalf of the holder of the note at that time, sent a letter to Laura Stein advising her that the loan was in default and of the amount required to cure the default and reinstate the loan.[5] Laura Stein and the defendant failed to cure the default. Citibank elected to accelerate the balance due on the note, declare the note due in full, and foreclose the mortgage securing the note.[6] Citibank commenced the present foreclosure action by service of process on July 13, 2009.[7] The complaint alleges, in relevant part, that

Citibank, as trustee, is the holder of the note and mortgage.

The defendant and Laura Stein filed an answer and special defenses on March 19, 2010. Their special defenses alleged that Citibank lacked standing as a trustee under General Statutes § 52-106, but that if Citibank had standing, it was required to modify the mortgage pursuant to an agreement between the Connecticut Attorney General and Countrywide Bank. They also alleged that Citibank did not provide the original note, and, therefore, could not commence the action, and that the complaint failed to establish that Citibank was the current holder and owner of the note and mortgage. Citibank pleaded a general denial in response to the special defenses.

On September 27, 2010, Citibank filed a motion for summary judgment as to liability only. The defendant and Laura Stein objected to the motion for summary judgment on the ground that there were genuine issues of material fact as to whether Citibank was the holder of the note and mortgage. The court, *Mintz, J.*, sustained the defendant's objection to the motion by granting additional time for discovery on the issue of Citibank's standing and ordering that the motion for summary judgment be set down for argument on November 17, 2014. Judge Heller found that Citibank's motion for summary judgment was never argued.

On September 10, 2014, Laura Stein filed a motion to dismiss in which she contended, among other things, that Citibank lacked standing to pursue the present action under General Statutes §§ 42a-3-301 and 52-106. She withdrew her motion to dismiss, however, on the first day of trial, stipulated to certain facts, and consented to the entry of summary judgment against her as to liability only.[8]

On June 19, 2015, five days before trial, the defendant filed a motion to dismiss on the ground that Citibank lacked standing to pursue the action against him. After hearing from counsel for the parties, Judge Heller determined that she would hear and decide the defendant's motion to dismiss at the same time and, in connection with, the merits of Citibank's foreclosure case. The parties, all represented by counsel, appeared before the court for trial on June 24, 25 and 26, 2015.[9] On January 7, 2016, after the parties had submitted posttrial briefs, the court issued a memorandum of decision in which it denied the defendant's motion to dismiss and rendered a judgment of strict foreclosure in favor of Citibank.

On January 19, 2016, the defendant filed a motion for a new trial and on January 27, 2016, filed a motion for reargument and reconsideration of the court's ruling on his motion to dismiss. Citibank objected to both motions. The court granted the motion for reargument,

and counsel for Citibank and the defendant appeared for argument before the court on February 16, 2016.[10] The court reserved reconsideration of its ruling on the motion to dismiss and determined to open the record and take additional testimony from Citibank's witness, Johnny Nguyen of Nationstar Mortgage LLC (Nationstar), the servicer of the subject mortgage.[11]

On August 29, 2016, Citibank filed a motion to substitute Wilmington Trust as the plaintiff because the mortgage had been assigned to Wilmington Trust after the present action was commenced. On August 30, 2016, the court heard additional testimony from Nguyen. Before commencing the hearing, the court granted Citibank's motion to substitute Wilmington Trust as the plaintiff. On September 19, 2016, the defendant filed a motion for reargument and reconsideration of Citibank's motion to substitute Wilmington Trust as the plaintiff. The court heard argument from counsel on the defendant's motion for reargument and reconsideration on November 28, 2016.[12] On February 1, 2017, counsel for the defendant filed a memorandum in further support of his motion to reargue the motion to substitute, and the defendant submitted a statement and memorandum of his own. Wilmington Trust filed an objection to the motion to reargue on February 15, 2017.

On February 21, 2017, the court issued a memorandum of decision on the defendant's three pending motions before it, to wit, his motion for a new trial, filed on January 19, 2016; his motion for reargument on his motion to dismiss, filed on January 27, 2016; and his motion for reargument on Citibank's motion to substitute Wilmington Trust as the plaintiff, filed on September 19, 2016. The court denied all three of the defendant's reargument motions and opened the judgment of strict foreclosure previously entered for the purpose of setting the law days. The defendant timely appealed to this court.

I

The defendant first claims that the court erred in finding that Citibank had standing to bring this foreclosure action against him and, thus, that it had subject matter jurisdiction over the action. Specifically, he claims that the court (1) erred by denying his motion to dismiss because Citibank lacked standing to commence the action and (2) abused its discretion by failing to grant his motion to reargue and for reconsideration of his motion to dismiss.[13] We reject the defendant's claims.

The defendant's claims require us to examine the court's memoranda of decision in detail. The court's decisions set forth the following facts and legal analyses.

Prior to the start of trial in June, 2015, the defendant filed a motion to dismiss claiming that he had a good

faith belief that Citibank lacked standing to pursue the action. In its January 7, 2016 memorandum of decision, the trial court found that the defendant had argued that Citibank lacked standing because (i) it was not the owner of the note and the debt at issue and/or it was not the holder of the note and (ii) it was not authorized by the owner of the note and the debt to prosecute the action on behalf of the owner. The defendant also argued that Citibank lacked standing under General Statutes § 52-106. Citibank contended that it had standing as both the holder of the note and as trustee.

The court credited the uncontroverted testimony of Nguyen that Citibank was the holder of the note that had been endorsed in blank. The court cited the statutory and common-law definitions of "holder." General Statutes § 42a-3-104 (a) provides, in relevant part, that a holder is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." "The holder is the person or entity in possession of the instrument if the instrument is payable to bearer. . . . When an instrument is endorsed in blank, it becomes payable to bearer and may be negotiated by transfer of possession alone . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 126, 74 A.3d 1225 (2013). The court concluded, therefore, that because Citibank was the holder of the note, it had proved that it was the owner because "the note holder is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage under [General Statutes] § 49-17." (Internal quotation marks omitted.) *American Home Mortgage Servicing, Inc.* v. *Reilly*, 157 Conn. App. 127, 133–34, 117 A.3d 500, cert. denied, 317 Conn. 915, 117 A.3d 854 (2015). Citing *Anderson* v. *Litchfield*, 4 Conn. App. 24, 28, 492 A.2d 210 (1985),[14] for the law regarding the burden necessary to rebut the presumption of ownership, the court found that the defendant had failed to offer sufficient and persuasive contradictory evidence to disprove the presumption that Citibank was the holder of the note.

The defendant further argued that Nguyen's testimony alone was insufficient to prove that Citibank was authorized to commence and pursue the action without the relevant business records, particularly the pooling and service agreement, being offered into evidence. The court found that the defendant offered no evidence to contradict Nguyen's testimony, which was predicated on his personal knowledge of Nationstar's business records. It disagreed that Citibank was required to produce its business records to support its claim. "Appellate courts in this state have held that [the evidentiary] burden is satisfied when the mortgagee includes in its submission to the court a sworn affidavit averring that the mortgagee is the holder of the promissory note in question at the time it commenced the action." *GMAC*

*Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013).

The court also concluded that Citibank had standing to prosecute the foreclosure action as holder of the note and as a trustee.[15] Section 52-106 provides, "[a]n executor, administrator, or trustee of an express trust may sue or be sued without joining the persons represented by him and beneficially interested in the action." "[T]he trustee's standing to sue arises out of its legal title to the trust res." (Internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Fequiere*, 119 Conn. App. 570, 580, 989 A.2d 606, cert. denied, 295 Conn. 922, 991 A.2d 564 (2010). Moreover, "[o]ur appellate courts have not required a foreclosure plaintiff to produce evidence of ownership deriving from a pooling and servicing agreement in making its prima facie case . . . ." *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 399, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014).

"The relevance of securitization documents on a lender's standing to foreclose a mortgage is questionable. Simply put, a borrower has a contract—the note and mortgage—with the owner or holder of the loan documents. The borrower, however, is not a party to the pooling and servicing agreement, commonly referred to as a 'trust' document. . . . It is a basic tenet of contract law that only parties to an agreement may challenge its enforcement. . . . [C]lose scrutiny of trust documents and challenges to their veracity appear to offer little benefit to the court in determining the owner or holder of a note in a particular case. If admissible evidence of holder status has been presented, a borrower must then challenge those facts by competent evidence addressed to the delivery of the loan documents. In most instances, a borrower's challenge to the content of trust documents or other borrower claims appear to have little relevance to the issue of standing." (Internal quotation marks omitted.) Id., 393–94.

The court continued quoting that "[t]he law of trusts limits the ability of a borrower to challenge whether conditions in the pooling and servicing agreement were satisfied. . . . [A] stranger to a trust, when sued by the Trustee, cannot set up as a defense a violation of the rights of the Trust by the Trustee. . . . Generally, the parties to a pooling and servicing agreement are the certificate holders, who own interests in the mortgages, a trustee, a depositor of the assets, and a servicer. Borrowers, however, have no contractual privity with the parties to a pooling and servicing agreement." (Citations omitted; internal quotation marks omitted.) Id., 394. The court found that Citibank had standing to prosecute the present action and that the action was not barred by any of the defendant's remaining special defenses. The court, therefore, denied the defendant's motion to dismiss. After hearing appraisal evidence and

the amount of debt, the court found that the debt far exceeded the fair market value of the property. It issued a judgment of strict foreclosure in favor of Citibank and set law days.

As previously stated, the defendant filed a motion for reargument and reconsideration of his motion to dismiss. The defendant contended that following the hearing on the motion to dismiss and the foreclosure trial, he discovered new evidence to the effect that Citibank was not the owner of the note and debt at issue and had not been for some time. According to the defendant, Wilmington Trust was the owner. The defendant first raised the argument in his posttrial memorandum filed on August 24, 2015, in which he asked the court to take judicial notice of certain public documents that purportedly demonstrated that Wilmington Trust had succeeded Citibank as trustee for the Holders of Bear Stearns Alt-A Trust 2006-6. The court declined to do so, noting that even if it took judicial notice, as requested, the information would not have afforded a basis for dismissing the action. See footnote 15 of this opinion. The defendant also claimed that Wells Fargo Bank was the servicer of the mortgage, not Nationstar, thus calling into question the veracity of Nguyen's testimony.

The court granted reargument on February 16, 2016, but reserved decision on reconsideration of the motion to dismiss. On May 26, 2016, the court decided to open the record to take further testimony from Nguyen to determine whether Citibank, Wilmington Trust, or some other entity was the trustee of the trust on June 25, 2015, when Nguyen testified at the foreclosure trial; whether Nationstar, Wells Fargo, or some other entity was the mortgage servicer for the defendant's mortgage when Nguyen testified; and if an entity other than Nationstar was the mortgage servicer, whether Nguyen was familiar with the books and records of such mortgage servicer at the time of trial and was authorized to testify on its behalf.

The court heard further testimony from Nguyen on August 30, 2016. The court issued its decision in a memorandum of decision on February 21, 2017. The court credited Nguyen's testimony and made the following additional findings of fact. Nationstar has been the primary servicer of the mortgage since the beginning of 2014 and was the servicer on June 25, 2015, when Nguyen testified at the foreclosure trial and it continued to be the mortgage servicer. Citibank was the trustee and the holder of the note at the time the foreclosure complaint was served in 2009 and had authority to commence the action. Wilmington Trust became the trustee in 2012, was the trustee on June 25, 2015, and remained the trustee. It also was the holder of the note in June, 2015. Two assignments of the mortgage were admitted into evidence. Citibank assigned it to Nationstar on May

4, 2016, and Nationstar assigned it to Wilmington Trust on March 30, 2016.

With respect to the defendant's motion for reconsideration of his motion to dismiss, the court stated that the ground of the defendant's motion for reconsideration was newly discovered evidence. The court cited the controlling law. "A party who wishes to reargue a decision or order rendered by the court shall, within twenty days from the issuance of notice of the rendition of the decision or order, file a motion to reargue setting forth the decision or order which is the subject of the motion, the name of the judge who rendered it, and the specific grounds for reargument upon which the party relies." Practice Book § 11-12 (a). "[T]he purpose of reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . [Reargument] also may be used to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the court." (Citation omitted; internal quotation marks omitted.) *Opoku* v. *Grant*, 63 Conn. App. 686, 692–93, 778 A.2d 981 (2001).

"Newly discovered evidence may warrant reconsideration of a court's decision. However, [f]or evidence to be newly discovered, it must be of such a nature that [it] could not have been earlier discovered by the exercise of due diligence." (Internal quotation marks omitted.) *Durkin Village Plainville, LLC* v. *Cunningham*, 97 Conn. App. 640, 656, 905 A.2d 1256 (2006). The court found that the evidence the defendant offered fell short of this standard. In fact, the court stated, the defendant never sought to open the record to introduce evidence that Wilmington Trust was the successor trustee to Citibank. It was the court that ordered further testimony from Nguyen to respond to the issues raised by the defendant.

The court found that the defendant, in his posttrial brief, had represented that he had learned through a Lexis case search and a search of public records that Wilmington Trust had replaced Citibank as the trustee in late 2012. The defendant reported that he had learned of the transfer of the trust from a Moody's rating service, pleadings in other lawsuits alleging that Wilmington Trust had succeeded Citibank, and a Schedule A to a document described as a limited power of attorney dated November 18, 2013, and recorded in county records in Salt Lake City, Utah. The court found, however, that although the evidence may have been newly discovered by the defendant, it had been available publicly on the Moodys.com website, in the New York federal bankruptcy court files, and the Utah land records for years. A Lexis case search and a search of the public

records months before the foreclosure trial would have revealed the information regarding the change of trustee. The court, therefore, declined to reconsider its ruling denying the defendant's motion to dismiss.[16] The court set new law days and the defendant appealed.

## A

We now turn to the defendant's central claim that the court erred when it denied his motion to dismiss because the court lacked subject matter jurisdiction due to Citibank's lack of standing. We disagree.

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the [plaintiff] cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . [It] tests, inter alia, whether on the face of the record, the court is without jurisdiction. . . . The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Citation omitted; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Torres*, 149 Conn. App. 25, 29, 88 A.3d 570 (2014).

"The issue of standing implicates the trial court's subject matter jurisdiction and therefore presents a threshold issue for our determination. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [When] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time. . . . [T]he plaintiff ultimately bears the burden of establishing standing." (Citations omitted; internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, supra, 149 Conn. App. 397–98.

"[W]here legal conclusions of the [trial] court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision. . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Torres*, supra, 149 Conn. App. 29.[17]

The basis of the defendant's multiple claims appears to stem from the securitization of the note and its transfer from one trustee or holder to another. The defen-

dant's claims are fact based,[18] as he does not take exception to the law cited by the court in its memoranda of decision. The resolution of the present appeal turns on the entity legally entitled to commence the present action and the authority to prosecute the action at trial in June, 2015. The trial court found that Citibank was the holder of the debt and the trustee with authority to commence the action. The court also found that at the time of trial, Nationstar was the primary servicer of the mortgage and was authorized to prosecute the foreclosure action. Wilmington Trust became the trustee in 2012 and was the trustee and holder of the note in June, 2015. Citibank assigned the mortgage to Nationstar, which assigned it to Wilmington Trust in 2016.

Our review of the record, including the exhibits and trial testimony, supports the court's factual findings and is consistent with our law of negotiable instruments and foreclosure. "[Section] 49-17 permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage even when the mortgage has not yet been assigned to him. . . . The statute codifies the common-law principle of long standing that the mortgage follows the note, pursuant to which only the rightful owner of the note has the right to enforce the mortgage. . . . Our legislature, by adopting § 49-17, has provide[d] an avenue for the holder of the note to foreclose on the property when the mortgage has not been assigned to him." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Fequiere*, 119 Conn. App. 570, 576–77, 989 A.2d 606, cert. denied, 295 Conn. 922, 991 A.2d 564 (2010).

"Generally, in order to have standing to bring a foreclosure action the plaintiff must, at the time the action is commenced, be entitled to enforce the promissory note that is secured by the property. . . . The plaintiff's possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note, thereby conferring standing to commence a foreclosure action. . . . After the plaintiff has presented this prima facie evidence, the burden is on the defendant to impeach the validity of [the] evidence that [the plaintiff] possessed the note at the time that it commenced the . . . action or to rebut the presumption that [the plaintiff] owns the underlying debt." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Kydes*, 183 Conn. App. 479, 487,      A.3d      , cert. denied, 330 Conn. 925,      A.3d      (2018).

"The rules for standing in foreclosure actions when the issue of standing is raised may be succinctly summarized as follows. When a holder seeks to enforce a note through foreclosure, the holder must produce the note. The note must be sufficiently endorsed so as to demonstrate that the foreclosing party is a holder, either by

a specific endorsement to that party or by means of a blank endorsement to bearer. If the foreclosing party shows that it is a valid holder of the note and can produce the note, it is presumed that the foreclosing party is the rightful owner of the debt. That presumption may be rebutted by the defending party, but the burden is on the defending party to provide sufficient proof that the holder of the note is not the owner of the debt, for example, by showing that ownership of the debt had passed to another party. It is not sufficient to provide that proof, however, merely by pointing to some documentary lacuna in the chain of title that *might* give rise to the possibility that some other party owns the debt. In order to rebut the presumption, the defendant must *prove* that someone else is the owner of the note and debt. Absent that proof, the plaintiff may rest its standing to foreclose on its status as the holder of the note." (Emphasis in original.) *U.S. Bank, National Assn.* v. *Schaeffer*, 160 Conn. App. 138, 150, 125 A.3d 262 (2015).

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The statute authorizing standing in this [foreclosure] case is General Statutes § 52-118, which provides in relevant part that an assignee . . . may sue . . . in his own name . . . . The legislature's use of the word may in the statute indicates that an assignee merely has the option to sue in his name. Conversely, as the Supreme Court has stated, an assignee also has the option to maintain [an] action in the name of his assignor. *Jacobson* v. *Robington*, 139 Conn. 532, 539, 95 A.2d 66 (1953)." (Internal quotation marks omitted.) *Dime Savings Bank of Wallingford* v. *Arpaia*, 55 Conn. App. 180, 184, 738 A.2d 715 (1999); see also *Washington Mutual Bank, F.A.* v. *Walpuck*, 134 Conn. App. 446, 447, 43 A.3d 174, cert. denied, 305 Conn. 902, 43 A.3d 663 (2012) (*Dime Savings Bank of Wallingford* is dispositive).

Citibank alleged in the complaint that it was the holder of the note and in possession of the mortgage. A bank that "alleged that it possessed the note at the time it commenced [the] action, [is] entitled to reply upon that allegation unless the defendant present[s] facts to the contrary . . . ." *Bank of America, N.A.* v. *Kydes*, supra, 183 Conn. App. 489. The court did not find evidence that Citibank was not in possession of the note when the present action was commenced. The defendant has not pointed us to any evidence that disputes, let alone contradicts, the court's conclusion that Citibank was the holder of the note at the time the foreclosure action was commenced. At trial, Citibank presented a photocopy of the note secured by the mortgage. The defendant failed to provide any evidence to counter Citibank's claim. The defendant's principal argument seems to be that Citibank was not the trustee at the time of trial in June, 2015, and that Wilmington

Trust was not substituted as the plaintiff until August, 2016. An assignee may continue litigation in the name of the original plaintiff. *Jacobs* v. *Robington*, supra, 139 Conn. 539.

In the present case, Laura Stein signed the note in favor of Countywide Bank, which endorsed the note in favor of Home Loans, which endorsed the note in blank and provided it to Citibank. The court concluded that Citibank was the trustee and holder of the note when the action was commenced, and therefore, it had standing to do so. The court thus had subject matter jurisdiction. During trial, Citibank transferred the note to Wilmington Trust, which authorized Nationstar, its server, to prosecute the action in the name of Citibank. Wilmington Trust was substituted as the plaintiff prior to the court's opening the judgment of strict foreclosure for the purpose of setting the law days. See *Jacobson* v. *Robington*, supra, 139 Conn. 539 (assignee may prosecute in name of assignor). The court, therefore, had subject matter jurisdiction to adjudicate the action, and the defendant's claim fails.

### B

The defendant further claims that the court abused its discretion by opening the record to hear additional testimony from Citibank's witness. By opening the record and receiving more testimony from Nguyen, the defendant claims that the court gave Citibank a second bite at the apple. The defendant further claims that the court compounded the error by denying him the right to conduct further discovery. We disagree.

"Whether the trial court has jurisdiction to open a judgment of strict foreclosure is generally dependent on whether title has vested in the encumbrancer. See General Statutes § 49-15 (a) (1) (upon written motion by interested person, court may open and modify any judgment of strict foreclosure as it deems reasonable, provided no such judgment shall be opened after the title has become absolute in any encumbrancer)." (Emphasis omitted; internal quotation marks omitted.) *Real Estate Mortgage Network, Inc.* v. *Squillante*, 184 Conn. App. 356, 360–61,     A.3d     (2018).

In the present case, after the court rendered judgment in favor of Citibank in its January 7, 2016 memorandum of decision, the defendant filed a motion for reargument and reconsideration of the motion to substitute Wilmington Trust as the plaintiff. In the motion, the defendant alleged that Citibank and Wilmington Trust are not the investors or servicing authority for the loan, that the note is not in the BALTA 2006-6 Trust and that Nationstar has no current servicing authority. The court stated that it opened the record to take further testimony from Nguyen to determine the identity of the trustee on June 25, 2015, the identity of the servicer on that date, and whether Nguyen was familiar with the

books of the mortgage servicer, and whether he was authorized to testify on its behalf. It is obvious that the court opened the record to address the defendant's jurisdictional claims, and not to give Citibank a second bite at the apple.

We conclude that the court did not abuse its discretion by opening the record to take more evidence. Even if the trial court had abused its discretion by opening the record in response to the defendant's motion for reargument and reconsideration, this court has held that it will not review claims of error, if any, when they have been induced by the party claiming error on appeal. *LPP Mortgage, Ltd.* v. *Lynch*, 122 Conn. App. 686, 698, 1 A.3d 157 (2010). "[T]he appellate courts of this state have made it clear that a party cannot take a path at trial and change tactics on appeal. Furthermore, no party has the right to induce or invite error, if any, on the part of the trier of fact and seek reversal on appeal." *Moran* v. *Media News Group, Inc.*, 100 Conn. App. 485, 501, 918 A.2d 921 (2007).[19]

For the foregoing reasons, the defendant's claim that the court erred by denying his motions to dismiss and for reconsideration fails.

II

The defendant claims that the court abused its discretion by failing to consider documents that he claims dispute the witness' servicing authority, as well as Citibank's purported ownership of the note and authority to prosecute the foreclosure. We agree with Wilmington Trust that this claim is inadequately briefed.

Wilmington Trust points out that the defendant's brief on this issue is rambling and that it is not possible to determine the documents to which the defendant is referring. We have noted that the brief contains no references to a transcript from which Wilmington Trust, or this court, can infer how or when the defendant sought to introduce the documents he claims the court failed to consider. See footnote 2 of this opinion. We acknowledge that the defendant is representing himself and that we generally grant self-represented litigants some latitude so long as it does not interfere with the rights of other parties. See *Darin* v. *Cais*, 161 Conn. App. 475, 481, 129 A.3d 716 (2015). The defendant's briefing of the present claim is an instance, however, in which the plaintiff is at a disadvantage in replying to the defendant's arguments.

Appellate courts "are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks

omitted.) *McClancy* v. *Bank of America, N.A.*, 176 Conn. App. 408, 414, 168 A.3d 658, cert. denied, 327 Conn. 975, 174 A.3d 195 (2017). The defendant has not brought to our attention where in the record the court issued the ruling with which he takes issue. His brief cites no law and does not analyze the facts pursuant to the law on which he purportedly relies. We, therefore, are unable to review the claim.

### III

The defendant claims that Citibank's foreclosure action is deficient and false because the mortgagor did not default on the note. The defendant's argument is that Laura Stein is a nontitle owner of the property and, therefore, she could not mortgage the property. The fallacy in the defendant's argument is that he is the owner of the property and that he pledged the property as security for the note signed by Laura Stein, who admitted that the note is in default.

The mortgage, which is in evidence, states, among other things: "Borrower is Laura A. Stein and Brian M. Stein . . . Borrower is the mortgagor under this Security Instrument." "A mortgage is a contract of sale executed, with power to redeem. . . . The condition of a mortgage may be the payment of a debt, the indemnity of a surety, or the doing or not doing [of] any other act." *Cook* v. *Bartholomew*, 60 Conn. 24, 25, 22 A. 444 (1891). Black's Law Dictionary defines mortgagor as "[o]ne who, having all or some part of the title to property, by written instrument pledges that property for some particular purpose such as security for a debt. That party to a mortgage who gives legal title or a lien to the mortgagee to secure the mortgage loan." Black's Law Dictionary (5th Ed. 1979). Also "[o]ne who mortgages property; the mortgage-debtor, or borrower." Black's Law Dictionary (9th Ed. 2004).

"It has long been established at common law that [t]he mortgage is an incident only to the debt, which is the principal; it cannot be detached from [the debt]; distinct from the debt, it has no determinate value; and the assignee must hold it, at the will and disposal of the creditor, who has the note or bond, for which it is a collateral security." (Internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 318.[20]

At trial, Laura Stein stipulated that the note she signed was in default. She also stipulated that the signatures on the mortgage appeared to be hers and the defendant's. The defendant has not challenged the stipulation or otherwise disputed that his signature is on the mortgages. The defendant, therefore, is a mortgagor in default and his claim fails.[21]

### IV

The defendant's final claim is that Citibank failed to meet its burden under *J.E. Robert Co.* v. *Signature*

*Properties, LLC*, supra, 309 Conn. 307,[22] to prove its right to bring the present action as a nonholder in possession of the note. He argues that Citibank never appeared in court, and that its alleged servicer, who is not identified in the note, failed to prove the transfers by which it acquired the note. We do not agree.

The issue in *J.E. Robert Co.* concerned the "standing of parties other than the lender to bring [foreclosure] actions . . . [s]pecifically . . . whether a loan servicer for the owner and holder of a note and mortgage can have standing in its own right to institute a foreclosure action against the mortgage as transferee of the holder's rights under the Uniform Commercial Code (UCC), General Statutes §§ 42a-3-203 and 42a-3-301." Id., 310–11. Our Supreme Court determined that "through the pooling agreement, J.E. Robert had standing as a transferee . . . to enforce the note and mortgage in accordance with §§ 42a-3-203 and 42a-3-301"; id., 318; and as servicer, it had authority to institute the foreclosure action in its own name. Id., 311.

Our Supreme Court explained that "[s]ecuritization starts when a mortgage originator sells a mortgage and its note to a buyer, who is typically a subsidiary of an investment bank. . . . The investment bank bundles together the multitude of mortgages it purchased into a special purpose vehicle, usually in the form of a trust, and sells the income rights to other investors. . . . A pooling and servicing agreement establishes two entities that maintain the trust: a trustee, who manages the loan assets, and a servicer, who communicates with and collects monthly payments from the mortgagors." (Citations omitted; internal quotation marks omitted.) Id., 313 n.4. "The pooling agreement also designates another entity as [m]aster [s]ervicer, whose general responsibility is to administer mortgage loans other than those designated as specially serviced loans due to certain events such as imminent or actual default." (Internal quotation marks omitted.) Id., 313 n.5.

"A plaintiff's right to enforce a promissory note may be established under the UCC." Id., 319. See General Statutes §§ 42a-3-203 (a) and (b). "Consistent with these provisions, our appellate case law has recognized that, to enforce a note, one need not be the owner of the note; see, e.g., *Ninth RMA Partners, L.P.* v. *Krass*, 57 Conn. App. 1, 7, 746 A.2d 826 . . . cert. denied, 253 Conn. 918, 755 A.2d 215 (2000); or even the holder of the note. See, e.g., *Ulster Savings Bank* v. *28 Brynwood Lane, Ltd.*, 134 Conn. App. 699, 709–10, 41 A.3d 1077 (2012)." *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 320 n.14. Under § 42a-3-203 (a), there are two requirements to transfer an instrument: "(1) the transferor must intend to vest in the transferee the right to enforce the instrument; and (2) the transferor must deliver the instrument to the transferee so that the transferee has either actual or constructive posses-

sion." Id., 320.

Section 49-17 permits "the person entitled to receive the money secured [by a mortgage] but to whom the legal title to the mortgaged premises has never been conveyed" to bring a foreclosure action. (Emphasis omitted; internal quotation marks omitted.) Id., 324. The statute "simply requires a party to prove that [it is] the person entitled to receive the money secured [by the mortgage], and such a party may be someone other than the owner of the note." (Internal quotation marks omitted.) Id., 325. "[A] loan servicer entitled to receive money and otherwise administer a loan under the terms of a pooling and service agreement would not necessarily need to be the owner or holder of the note in order to institute a foreclosure action against the debtor." Id., 326.

"[A] holder of a note is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage under § 49-17." (Internal quotation marks omitted.) Id., 325 n.18. If the presumption is rebutted, the burden shifts "back to the plaintiff to demonstrate that the owner has vested it with the right to receive the money secured by the note." Id.

As to the plaintiff's burden of proof, "[i]t is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the note, and have the proper supporting documentation in hand when filing suit, showing the history of the note, so the defendant is duly apprised of the rights of the plaintiff." Id., 325–26 n.18. "The transferee does not enjoy the statutorily provided assumption of the right to enforce the instrument that accompanies a negotiated instrument, and so the transferee must account for possession of the [unendorsed] instrument by providing the transaction through which the transferee acquired it." (Internal quotation marks omitted.) Id., 326 n.18. "If there are multiple prior transfers, the transferee must prove each prior transfer. . . . Once the transferee establishes a successful transfer from a holder, he or she acquires the enforcement rights of that holder. Therefore, in cases in which a nonholder transferee seeks to enforce a note in foreclosure proceedings, if the defendants dispute the plaintiff's right to enforce the note, the plaintiff must prove that right." (Citations omitted; internal quotation marks omitted.) Id.

As set forth in part I of this opinion, the court found that Citibank was the holder of the note and, therefore, that it had standing to bring the action against the defendant.[23] The court also found that Nationstar was the servicer of the loan at the time of trial in June, 2015. Contrary to the defendant's argument that Citibank was required to present documentary evidence that Citibank was the holder of the note and that Nationstar was the servicer, *Wells Fargo Bank*, *N.A.* v. *Strong*, supra, 149 Conn. App. 392–93, holds otherwise. In the present mat-

ter, the court found that Citibank was the holder of the note entitled to bring the action against the defendant and that Nationstar was the servicer as of 2014 and through the time of trial. Our review of the record and the court's memoranda of decision supports the court's findings and, therefore, we conclude that the court properly determined that Citibank met the requirements of *J.E. Robert Co.* to prosecute the foreclosure action. Moreover, Wilmington Trust, which also acquired the mortgage, was substituted as the plaintiff prior to the court's opening the judgment of strict foreclosure for the purpose of setting the law days.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] Laura A. Stein, JPMorgan Chase Bank, N.A., the state of Connecticut, and Standard Oil of Connecticut, Inc., also were served as defendants, but they are not parties to this appeal. The defendants, other than Laura Stein, were defaulted. In this opinion, we refer to Brian Stein, also known as Brian M. Stein, as the defendant.

[2] Wilmington Trust claims that the defendant has failed to provide an adequate record for review as required by Practice Book § 61-10 ("responsibility of the appellant to provide an adequate record for review"). Specifically it claims that the defendant failed to provide copies of certain memoranda of law and portions of the transcript. We agree that the defendant failed to provide an adequate record in his principal brief or appendix. In his reply brief, however, he has included some of the documents omitted from his opening brief as noted by Wilmington Trust. Although the defendant provided a complete transcript of the June, 2015 trial and the August 30, 2016 hearing, he failed to include in his brief citations to the transcript that support his representation of facts as required by Practice Book § 67-4 (c). The defendant did not provide transcripts of oral arguments at the hearings on the various motions at issue in this appeal.

The defendant is a self-represented party. "[I]t is the established policy of the Connecticut Courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party . . . we are also aware that [a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Darin* v. *Cais*, 161 Conn. App. 475, 481, 129 A.3d 716 (2015). We have held, however, that an appellant may not raise new arguments for the first time in a reply brief as doing so deprives the appellee of an opportunity to respond to them. See *State* v. *Myers*, 178 Conn. App. 102, 106, 174 A.3d 197 (2017). In the present case, the defendant's belated efforts to provide an adequate record do not appear to have interfered with the rights of Wilmington Trust, and Wilmington Trust makes no such claim.

The failure of the defendant to cite to the record and portions of the transcript in his brief, as required by our rules, however, presents the court with a different problem. It requires the court, in its discretion, to search the record and transcript with respect to the defendant's representations of fact. Such review is time-consuming, and without citations, the court inadvertently may fail to find evidence that supports a party's representation or may be unable to review the claim. See part II of this opinion.

[3] The court found that the defendant and Laura Stein were divorced during the pendency of the present action. Their separation agreement (agreement) was incorporated in the March 12, 2013 judgment of dissolution. Pursuant to paragraph 2.1 of the agreement, the defendant retained ownership of the property free and clear of any claims by Laura Stein. Paragraph 9.5 of the agreement provides that both the defendant and Laura Stein are responsible for the first and second mortgages on the property.

[4] The property is located partially in New Canaan and partially in Norwalk. The mortgage was recorded in the land records of both New Canaan and Norwalk.

[5] Paragraph 15 of the mortgage provides that all notices were to be in writing and that any notice to the borrower "shall be deemed to have been

given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise . . . ."

[6] On June 15, 2009, Citibank notified the defendant and Laura Stein of their rights under the Emergency Mortgage Assistance Program. See General Statutes § 8-265cc et seq.

[7] The marshal served all defendants, except the defendant and Laura Stein, whom the marshal was unable to locate. On December 2, 2009, Citibank filed a motion to cite in the defendant and Laura Stein. The court, *Mintz*, *J.*, granted the motion to cite in and abode service was effectuated on January 13, 2010.

[8] Laura Stein stipulated that she attended the closing and signed numerous documents, but she could not recall what documents she had signed. She agreed that the signature on the documents that were shown to her appears to be hers. Those documents were the loan application, a HUD-1 form, the note, a mortgage that was recorded in the New Canaan land records, a mortgage that was recorded in the Norwalk land records, and a notice of a right to cancel. Laura Stein recognized what appeared to be the defendant's signature on the HUD-1 form, the New Canaan mortgage, and the Norwalk mortgage. She stipulated that the loan is in default. She did not recall receiving a demand letter dated September 6, 2008.

[9] On June 25, 2015, Citibank moved to default the defendant for failing to file a trial memorandum containing a statement of law and legal theories as required by the trial management order. The court denied the motion for default but limited the defendant to proceeding on the defenses he had alleged in his special defenses and motion to dismiss.

[10] The defendant failed to provide a copy of the transcript of the February 16, 2016 argument.

[11] The court issued its order on the defendant's motion for a new trial on May 26, 2016, stating "the court has opened the record and will take additional testimony from [Citibank's] witness at the foreclosure trial . . . Nguyen . . . regarding the following: whether . . . Citibank, Wilmington Trust . . . or some other entity was the trustee of the trust on June 25, 2015 when . . . Nguyen testified before this court; whether Nationstar, Wells Fargo Bank . . . or some other entity was the mortgage servicer for the defendant's mortgage when . . . Nguyen testified; and if an entity other than Nationstar was the mortgage servicer, whether . . . Nguyen was familiar with the books and records of such mortgage servicer at that time and was authorized to testify on its behalf."

[12] The defendant did not provide a transcript of the oral argument.

[13] The record clearly demonstrates that the court granted the defendant's reargument on his motion to dismiss. We will not address that portion of the defendant's claim further.

[14] "A presumption in favor of a party, that a particular fact is true, shifts the burden of persuasion to the proponent of the invalidity of that fact, and that burden is met when, by the particular quantum of proof, the validity of the fact has been rebutted." *Anderson* v. *Litchfield*, supra, 4 Conn. App. 28.

[15] In a footnote, the court addressed the defendant's claim raised in his posttrial brief that Wilmington Trust had succeeded Citibank as trustee. The court declined to take judicial notice of the transfer as the defendant requested. It concluded that even if it had taken judicial notice of the transfer, the change of trustee would not be a basis to dismiss the action, citing *Washington Mutual Bank, F.A.* v. *Walpuck*, 134 Conn. App. 446, 447, 43 A.3d 174 (assignee has option to pursue litigation in its own name or in name of its assignor), cert. denied, 305 Conn. 902, 43 A.3d 663 (2012).

[16] The court also addressed at length the defendant's motion for a new trial, distinguishing the deference between a motion for a new trial and a petition for a new trial. The denial of the defendant's motion for a new trial is not at issue in this appeal.

[17] In conjunction with this claim that the court erred by denying his motion to dismiss, the defendant argues that the court erred, as a matter of law, by failing to determine whether it had subject matter jurisdiction before permitting Citibank to present its case. "It is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court. . . . Our Supreme Court has explained that once raised, either by a party or by the court itself, the question [of subject matter jurisdiction] must be answered before the court may decide the case. . . . [e]verything else screeches to a halt whenever a non-frivolous jurisdictional claim is asserted." (Citations omitted; emphasis omitted; internal quotation marks

omitted.) *Fennelly* v. *Norton*, 103 Conn. App. 125, 136–37, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007).

The record discloses that several days prior to the start of trial on June 24, 2015, the defendant filed a motion to dismiss and the plaintiff filed two motions in limine. The court heard from counsel as to the bases of the parties' motions, which included multiple discovery issues regarding the production of documents and the parties' failure to comply with the court's standing orders. Thereafter, the court stated: "Well, I think we're going to proceed because I think we are starting this hearing, we have the motion to dismiss that is still on the table. We are past the point of conducting discovery. I think that based on Judge Povodator's order, it appears the parties were not in compliance with the standing orders and here we are, so we are going forward."

Although counsel for the defendant agreed to go forward with evidence, he repeated his request for the court to order Citibank to produce certain documents. In reply, the court stated: "I think you had the trial date and the trial was not continued. It had been continued, previously, but not continued in anticipation of any of the discovery that you are looking for now. The motion for protective order was denied. The motion to dismiss has been filed. There's not been a motion to continue the trial, and as I said when we started we're not going to continue the trial because the evidence in the trial will, you know, the plaintiff has the burden of proof, and if the plaintiff doesn't have standing, then the plaintiff can't go forward. So the evidence is going to address your motion as well."

Following trial, the court issued its memorandum of decision on January 7, 2016. In its decision, the court determined that Citibank had standing to pursue the action, which is the principal issue in the present appeal. Although the defendant is correct that a court, generally, is required to determine whether a party has standing before it considers the merits of a case, under the circumstances of the present matter, the timing of the court's determination does not constitute legal error. The evidence that Citibank would have had to present to prove standing was the same evidence that it was required to present to prove its case-in-chief. In 2015, the case had been pending for six years and the parties had been arguing over the production of documents for an extended period of time. Judge Mintz sustained the defendant's objection to Citibank's motion for summary judgment as to liability in order to permit the defendant to conduct discovery. Judge Mintz ordered that Citibank's motion for summary judgment was to be argued on November 17, 2014, but it was not argued on that date or ever. The discovery issue languished until June, 2015, when the case was set down for trial. The defendant could have secured a ruling on the issue of standing by pursuing discovery and arguing the motion for summary judgment on November 17, 2014. Judge Heller noted that the defendant took no action to compel discovery.

On appeal, the defendant has not demonstrated that he was harmed by Judge Heller's decision to hear the motion to dismiss and the plaintiff's case simultaneously. "When the jurisdictional facts are intertwined with the merits of the case, the court may in its discretion choose to postpone resolution of the jurisdictional question until the parties complete further discovery or, if necessary, a full trial on the merits has occurred." *Conboy* v. *State*, 292 Conn. 642, 653 n.16, 974 A.2d 669 (2009).

The trial court is empowered to manage its own docket. See *Ill* v. *Manzo-Ill*, 166 Conn. App. 809, 824–25, 142 A.3d 1176 (2016) (court has power to manage its dockets to prevent undue delays in disposition of pending cases). Under the procedural and factual circumstances of the present case, we cannot conclude that the court committed legal error or abused its discretion by pragmatically and flexibly proceeding with respect to the defendant's motion to dismiss. See *Suntech of Connecticut, Inc.* v. *Lawrence Brunoli, Inc.*, 173 Conn. App. 321, 333–34 n.15 (2017) (court does not abuse discretion by adhering to scheduling order), appeal dismissed, 330 Conn. 342,      A.3d      (2018).

[18] To the extent that the defendant claims that Nguyen was not a credible witness, he cannot prevail. "[A]s a general rule, appellate courts do not make credibility determinations. [I]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor

of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences from them." (Internal quotation marks omitted.) *Zilkha* v. *Zilkha*, 167 Conn. App. 480, 487–88, 144 A.3d 447 (2016).

[19] The defendant also claims that by opening the record and taking additional testimony from Nguyen, he was denied due process and the right to conduct further discovery. The claim is not reviewable, as the defendant did not preserve it in the trial court. Moreover, the defendant failed to identify what efforts he made to pursue posttrial discovery or how the trial court prevented him from pursuing additional discovery. "[I]t is well established that [w]e will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *In re Anna Lee M.*, 104 Conn. App. 121, 124 n.2, 931 A.2d 949, cert. denied, 284 Conn. 939, 937 A.2d 696 (2007). The defendant has not asked us to review the claim under any of the extraordinary remedy doctrines.

[20] The common-law rule has been codified in General Statutes § 49-17, which provides: "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies."

[21] The defendant also claims that Citibank failed to comply with the notice provisions of the mortgage as the default notice was sent to Laura Stein, who is not a mortgagor. Because Laura Stein and the defendant signed the mortgage, the claim fails.

[22] In *J.E. Robert Co.*, the defendants appealed from the judgment of strict foreclosure and a deficiency judgment "predicated on the standing of the original plaintiff, loan servicer J.E. Robert Company, Inc. . . . and the substitute plaintiff, Shaw's New London, LLC." *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 311. The underlying facts concerning the transfers of notes and mortgages and assignment of rights are recounted in the opinion; see id., 313–14; but are not relevant to the present appeal.

[23] Nguyen testified, in part, as follows:

"[The Plaintiff's counsel]: In this instance, was [Citibank] in physical possession of the note prior to the commencement of the action?

"[Nguyen]: Yes.

"[The Plaintiff's counsel]: And was the note sent to my law firm?

"[Nguyen]: It was."